UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWANNA KINDLE BROWN, *et al.*, | Case No. 2:22-cv-01057-JDP |
| Plaintiff, | |
| v. | ORDER |
| SURI HURLEY, LLC, | |
| Defendant. | |

Plaintiffs Brown and Haygood allege that defendant Suri Hurley, LLC violated their rights under the Fair Housing Act and various California laws by failing to accommodate Brown's disability. ECF No. 9. Defendant moves to dismiss the first amended complaint for lack of standing. ECF No. 11. Plaintiffs have filed an opposition. ECF No. 13. Both parties have submitted declarations and exhibits in support of their positions. The court held a hearing to consider defendant's motion on June 8, 2023. Plaintiffs have alleged a potentially cognizable injury, and the court will deny defendant's motion to dismiss.[1]

**Background**

Plaintiffs allege that Brown suffers from post-traumatic stress disorder and a second, unspecified psychiatric disorder. ECF No. 9 at 2. They allege that these conditions substantially

---

[1] This case was reassigned to the undersigned pursuant to the parties' consent. ECF No. 20; *see* 28 U.S.C. § 636(c).

1

limit Brown's major life activities and that Brown "utilizes an assistance animal"—a dog—"to alleviate the symptoms of [her] disabilities." *Id.*; *see also* ECF No. 13-1.

Plaintiffs allegedly applied to lease a unit in an apartment complex owned and operated by Raman Suri, principal of defendant Suri Hurley, LLC. ECF No. 9 at 2; *see also* ECF No. 11-4 at 1. They allege, and Haygood attests, that prior to signing the lease agreement they informed one of defendant's employees, Victoria Salazar, that Brown would live in the apartment along with her service dog. ECF No. 9 at 3; ECF 13-2 at 1-2. As part of the leasing process, Salazar led Haygood and another woman on a tour of the apartment. ECF No. 9 at 3; ECF No. 11-3 at 1-2. Haygood attests that the other woman was Brown and that she brought her dog on the tour. ECF 13-2 at 2. Salazar attests that the woman was not Brown, that Haygood had referred to the other woman as his daughter, and that neither had a dog. ECF No. 11-3 at 1-2.

In November 2021, Haygood entered into an agreement to lease the unit, but it did not list Brown as an occupant or reference a service dog. *See* ECF No. 11-5 at 5. Haygood attests that Salazar insisted—for reasons unknown to him—that the lease be in his name even though she knew that Brown and her dog would live in the unit. ECF No. 13-2 at 2. Haygood and Brown both attest that Brown and her dog have lived in the unit since the inception of the lease in November 2021. *Id.*; ECF No. 13-1 at 2. Plaintiffs submit a utility bill in Brown's name and images of text message exchanges between Haygood and Salazar showing that as of November 19, 2021, Salazar was on notice that both Brown and her dog were residing in the unit. ECF No. 13-2 at 5, 7, 11. Salazar attests that she first noticed that Brown and her dog were residing in the unit on May 18, 2022. ECF No. 11-3 at 2.

On June 4, 2022, defendants served Haygood with a "Three-Day Notice to Perform Conditions and/or Covenants or Quit." ECF No. 9 at 3; ECF No. 11-4 at 2. The notice—a copy of which is included with defendants' motion—stated that Haygood had violated the terms of the lease by permitting a guest to stay in the unit for more than seven consecutive days, by permitting a guest to park in the apartment parking lot, and by bringing a dog onto the premises. ECF No. 11-5 at 31. Plaintiffs allege that they explained to Sandra Matlock—general manager of the apartment complex—that Brown was the guest, that she was Haygood's wife, and that the dog

was her service animal. ECF No. 9 at 3; ECF No. 13-2 at 3. Matlock purportedly told Haygood "that the apartment community was not required to accommodate assistance animals, so they did not have to accommodate [Brown's] assistance animal." ECF No. 9 at 3; ECF No. 13-2 at 3 (attesting to similar). On the basis of these allegations, plaintiffs claim that defendant violated their rights under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ("FHA"); the California Fair Employment and Housing Act, Cal. Gov. Code §§ 12900 *et seq.* ("FEHA"); and the California Unruh Act, Cal. Civ. Code §§ 51-53. ECF No. 9 at 3-4.

Suri attests that shortly after Matlock spoke with Haygood, she emailed Haygood an application to add his wife to the lease and an application to keep a service animal in the unit. ECF No. 11-4 at 2. This email, a copy of which is included with defendant's motion, requests a copy of Brown's driver's license, two recent pay stubs, and "the doctor documents, training [documents,] and pictures that the [service animal] application asks for." ECF No. 11-5 at 35. Suri attests that plaintiffs have not submitted either application. ECF No. 11-4 at 2.

**Legal Standard**

"Standing is the threshold issue of any federal action, a matter of jurisdiction because 'the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Employers-Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Anchor Cap. Advisors*, 498 F.3d 920, 923 (9th Cir. 2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). As a jurisdictional requirement, standing is properly addressed in a motion under Federal Rules of Civil Procedure 12(b)(1), *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000), and establishing it is plaintiffs' burden, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A jurisdictional challenge made under Rule 12(b)(1) can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, the moving party asserts that the allegations in the complaint are "insufficient on their face" to establish federal jurisdiction. *Id.* "Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In evaluating such a claim, the court accepts the

1 allegations as true, and the plaintiff need not present evidence outside the pleadings.  *Id.*

2 In a factual challenge, the moving party "disputes the truth of the allegations that, by
3 themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.  "When
4 challenged on allegations of jurisdictional facts, the parties must support their allegations by
5 competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010).  The court does not simply
6 accept the allegations in the complaint as true.  *Safe Air*, 373 F.3d at 1039.  Instead, it makes
7 findings of fact, resolving any material factual disputes by independently evaluating the evidence.
8 *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944-45 (9th Cir. 2021).  However,
9 when "ruling on a jurisdictional motion involving factual issues [that] also go to the merits, the
10 trial court should employ the standard applicable to a motion for summary judgment." *Augustine*
11 *v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).  Under this standard, "the moving party
12 should prevail only if the material jurisdictional facts are not in dispute and the moving party is
13 entitled to prevail as a matter of law." *Id.*

14 **Discussion**

15 **A.  Fair Housing Act Standing**

16 Defendant brings a factual challenge to plaintiffs' standing under the FHA.  ECF No. 11-
17 1.  "[C]laims brought under the Act are to be judged under a very liberal standing requirement."
18 *San Pedro Hotel., Inc. v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998).  The "sole
19 requirement for standing to sue under [the FHA] is the Art[icle] III minima of injury in fact: that
20 the plaintiff allege that as a result of the defendant's actions he has suffered a distinct and
21 palpable injury." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (internal quotation
22 marks omitted).  To establish Article III standing, plaintiff must show (1) an injury-in-fact that is
23 both (2) causally connected to defendant's challenged conduct and (3) likely to be "redressed by a
24 favorable decision." *Lujan*, 504 U.S. at 560-61 (internal citations and quotation marks omitted).
25 The injury-in-fact must be both "concrete and particularized" and "actual or imminent, not
26 conjectural or hypothetical." *Id.* at 560 (internal citations and quotation marks omitted).

27 Defendant first argues that plaintiffs lack standing because "Brown is not and never has
28 been a tenant or applicant of the Apartment Complex/Subject Apartment . . . ." ECF No. 11-1 at

4

2. The FHA permits a civil action to be brought by any "aggrieved person"—defined as anyone who "claims to have been injured by a discriminatory housing practice" or "believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. §§ 3613(a)(1)(A) & 3602(i). Under this liberal standing requirement, "any person harmed by discrimination, whether or not the target of the discrimination, can sue to recover for his or her own injury." *San Pedro Hotel Co., Inc.*, 159 F.3d at 475.

There is at least a genuine dispute of fact that Brown has resided in the apartment unit with her dog for the duration of the lease agreement. Both plaintiffs attest as much, and an attached text exchange between Haygood and Salazar suggests that defendant's employees may have been aware of that fact. *See* ECF Nos. 13-1 & 13-2. Defendant cites no authority supporting its view that the FHA requires a plaintiff to have formally applied for housing or to have been listed on a lease agreement in order to have standing. Even if defendant had made such a showing, defendant does not dispute that Haygood would be aggrieved by the eviction of his wife. Thus, the mere fact that Brown is not listed on the lease does not defeat standing.

Defendant next argues that plaintiffs have not alleged an injury-in-fact because defendant never refused a reasonable accommodation request. ECF No. 11-1 at 2. Plaintiffs argue that they suffered at least two cognizable injuries: first, they argue that defendant violated their rights under 42 U.S.C. § 3604(c) when its representative, Sandra Matlock, allegedly stated that "the apartment community was not required to accommodate assistance animals, so they did not have to accommodate [Brown's] assistance animal." ECF No. 9 at 3; *see also* ECF No. 13-2 at 3. Second, they argue that defendant violated the FHA by "attempting to have [Brown] reapply to live at the apartment" and by seeking "additional information . . . [,] including medical information and information regarding her dog." ECF No. 13 at 9. Plaintiffs' first argument is sufficient to confer standing.

"The FHA makes it unlawful for owners or their agents to make any statement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based [handicap] or an intention to make any such preference, limitation or discrimination." *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999) (citing 42 U.S.C.

5

1  § 3604(c)) (holding that the statement "[t]he owners don't want to rent to Blacks" is actionable
2  race discrimination under § 3604(c)). This section "applies to all oral notices or statements by a
3  person engaged in the rental of a dwelling." *Id.* at 1054-55. However, under § 3604(c), a "stray
4  remark" that "is unrelated to the decisional process . . . is insufficient to show discrimination."
5  *Id.* A comment can be unrelated to the decisional process if "the person making the statement has
6  no influence on the decision-making" or if "the statement is made at a moment 'temporally'
7  unrelated to a discriminatory decision." *Lee v. Retail Store Emp. Bldg. Corp.*, 15-CV-04768-
8  LHK, 2017 WL 346021, at *15 (N.D. Cal. Jan. 24, 2017) (citing *Riesgo v. Edward D. Sultan Co.*,
9  Ltd, 156 F. App'x 939, 940 (9th Cir. 2005) ("His statements were both temporally and
10 substantively unrelated to [the plaintiff's] termination process.")).

11      Defendant does not provide a declaration from Matlock or dispute that Matlock made the
12 alleged statement. Instead, defendant points out that Matlock sent plaintiffs an email indicating
13 that the apartment might accommodate a service animal if plaintiffs were to provide sufficient
14 documentation. *See* ECF No. 15 at 6; ECF No. 11-5 at 35. Although the fact that Matlock sent
15 this email could be interpreted as undermining the sincerity or importance of Matlock's
16 statement, it appears to indicate that she was involved in the decision-making process. Moreover,
17 considering that the statement was uttered in the days between issuing plaintiffs an eviction notice
18 and providing them a service animal application, it cannot reasonably be understood as
19 temporally unrelated to the decision-making process. To be sure, the statement's meaning and
20 importance are ambiguous given that defendant has not denied plaintiffs' application or enforced
21 the eviction. But such factual ambiguity goes to the merits of plaintiffs' claims and cannot be
22 resolved on a motion to dismiss. Thus, at this stage, there is a genuine dispute of fact as to
23 whether plaintiffs have suffered a cognizable injury under the FHA, and their claims cannot be
24 dismissed for lack of standing.[2]

---

[2] The court expresses no opinion on the potential strength of arguments attacking the sufficiency of plaintiffs' evidence on the merits, should such arguments be raised in a motion for summary judgment.

**B. State Law Claims**

Plaintiffs' remaining claims are for alleged violations of the California Unruh Act and the FEHA. ECF No. 9 at 5-6. The Ninth Circuit has determined that "the same standards [apply] to FHA and FEHA claims." *Walker v. City of Lakewood*, 272 F.3d 1114, 1131 n.8 (9th Cir. 2001) ("Because the [plaintiff] can maintain an action under [the FHA], we conclude that [the plaintiff] also can bring a [] claim under the FEHA."). Because the court finds that plaintiffs have standing to bring their FHA claims, they also have standing under the FEHA.

Defendant argues that plaintiffs cannot demonstrate "intentional discrimination"—which is necessary to proceed under the Unruh Act—because "any barrier to plaintiffs full use and enjoyment of the Apartment Complex is due solely to [their] refusal and failure to complete and return the lease application for Brown." ECF No. 11-1 at 10 (citing *Wilkins-Jones v. Cnty. of Alameda*, 859 F. Supp. 2d 1039, 1051 (N.D. Cal. Mar. 14, 2012) ("To the extent Plaintiff seeks to make an Unruh Act claim separate from an ADA claim, she must allege intentional discrimination."). Plaintiffs allege that the general manager of defendant's apartment complex told them directly that the apartment does not accommodate service dogs. Even in the absence of further refusals to accommodate, such pronouncements can constitute actionable discrimination under the Unruh Act. *See Long v. Valentino*, 265 Cal. Rptr. 96, 102 (Cal. App. 4th Dist. 1989), *reh'g denied, modified*, (Jan. 19, 1990) (explaining that "an announcement such as 'You can't eat in my diner because you are a lawyer, bricklayer, female, or Indian chief' would be actionable under the Unruh Act, although words alone were the means employed to effect unlawful discrimination").

Accordingly, it is hereby ORDERED that defendant's motion to dismiss, ECF No. 11, is denied.

IT IS SO ORDERED.

Dated:   June 20, 2023

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE